UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL SEAN PERKINS,

               Petitioner,          Case No. 2:23-cv-10050
                                                    Hon. Nancy G. Edmunds

v.

JAMES SCHIEBNER,

               Respondent.
_____/

**OPINION AND ORDER GRANTING MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 7)**

I

Michigan prisoner Michael Sean Perkins filed this petition for writ of habeas corpus under 28 U.S.C. § 2254. The petition challenges Perkins' 1990 Oakland Circuit Court convictions for first-degree felony murder and arson of a dwelling. The predicate felony for the felony-murder charge was third-degree criminal sexual conduct. In 1995, after Perkins' direct appeal concluded, the Michigan Court of Appeals held that the crime of third-degree criminal sexual conduct requires a live victim. *See People v. Hutner*, 209 Mich. App. 280 (1995). Perkins asserts that because he sexually penetrated the victim's body after he strangled her to death, he is not guilty of first-degree felony murder.

Rather than respond to the petition on the merits, Respondent filed a motion to dismiss, asserting that the petition was untimely filed. (Motion, ECF No. 7.) Perkins filed a response,

arguing that his recent discovery of *Hutner* excuses his delayed filing. (Response, ECF No. 10.)[1] For the reasons that follow, the court will nevertheless grant the motion and dismiss the case.

II

On March 7, 1988, Perkins strangled Linda Stacy to death in her Southfield apartment. Perkins attempted to destroy the scene by setting a fire. The fire was relatively well contained to Stacey's room, however, and an examination of her partially burned body revealed her cause of death and evidence of sexual assault. (Opinion, ECF No. 8-32, PageID.3171.) Perkins was tried twice. On May 14, 1990, the jury at his second trial found him guilty of first-degree felony murder and arson, with the predicate felony for the murder charge being commission or attempted commission of third-degree criminal sexual conduct. (Jury Instructions, ECF No. 8-24, PageID.2999-3001, 3008; Verdict, ECF No. 8-25, PageID.3035.)

Perkins filed a direct appeal. On August 23, 1993, the Michigan Court of Appeals affirmed his convictions in an unpublished opinion. (Opinion, ECF No. 8-32, PageID.3170.) Perkins did not appeal to the Michigan Supreme Court.

Over twenty-five years later, on February 26, 2019, Perkins filed a motion for relief from judgment in the trial court through retained counsel raising his *Hutner* claim. (Motion, ECF No. 8-28, PageID.3112-13, Brief in Support, ECF No. 8-27, PageID.3053, 3055-61.) The prosecutor responded to the motion and conceded that *Hutner* created a new rule of law that narrowed the conduct proscribed by the criminal sexual conduct statute, thus making it apply retroactively to cases on collateral review. (Answer, ECF No. 8-30, PageID.3149-50.) The prosecutor asserted, however, that *Hutner* did not apply to Perkins' case because: (1) unlike *Hutner* it was not known

---

[1] Petitioner's motion to extend time to file a response to the motion to dismiss is granted. (Motion to Extend Time, ECF No. 9.)

2

whether Stacy died before or after Perkins sexually penetrated her despite the trial prosecutor's theory of the case, (*Id.* at 3150-51), (2) also unlike *Hutner,* the evidence at Perkins' trial indicated that he at least attempted to commit criminal sexual conduct while Stacy was alive, satisfying the predicate-felony for his murder conviction, (*Id.* at 3151-54), and (3) Perkins failed to demonstrate good cause for his failure to raise the issue earlier. (*Id.* at 3155-58.)

On August 13, 2019, the trial court issued an order denying the motion for relief from judgment "for the reasons outlined in the People's responsive pleading." (Order, ECF No. 8-31, PageID.3167.)

Petitioner appealed this order through the state courts. On May 13, 2020, the Michigan Court of Appeals denied leave to appeal "because defendant has failed to establish that the trial court erred in denying the motion for relief from judgment." (Order, ECF No. 8-33, PageID.3269.) The Michigan Supreme Court then denied leave to appeal on October 8, 2021, (Order, ECF No. 8-34, PageID.3669), and it denied reconsideration on January 4, 2022. (Order, ECF No. 8-34, PageID.3661.)

Perkins signed and dated his federal habeas petition one year later, on January 3, 2023. (Petition, ECF No. 1, PageID.33.)

III

There is a one-year statute of limitations for state prisoners seeking federal habeas relief. The limitations period runs from the latest of one of four specified dates. *See* 28 U.S.C. § 2244(d)(1)(A)-(D). The unusual circumstances of this case require the Court to consider all four potential starting points.

A

Under the first of four potential starting dates, the limitations period commences when the habeas petitioner's judgment became final on direct review or the day when the time for seeking direct review expired. *See* § 2244(d)(1)(A). Perkins's direct review ended when the Michigan Court of Appeals affirmed his conviction on August 23, 1993, and he failed to appeal that decision to the Michigan Supreme Court. Because this date preceded the enactment of the statute of limitations on April 24, 1996, the starting point for the limitations period under this section is set at April 25, 1996. *See Wood v. Milyard*, 566 U.S. 463, 468 (2012). Because, as discussed in the following three sections, none of the other potential starting dates apply, this is the section that controls. The limitations period began in Perkins' case on April 25, 1996.

B

The second potential starting point occurs where there is an impediment created by government action in violation of the Constitution or laws of the United States that prevents a prisoner from filing his habeas petition. *See* § 2244(d)(1)(B). Under this section, the limitations period commences when the impediment is removed. *See Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 405 (2001). Perkins asserts that such an impediment existed for him because conditions at the law libraries in prison made it difficult for him to discover the existence of *Hutner*.

Perkins fails to demonstrate that the alleged poor quality of his prison libraries and resources constituted unconstitutional conduct that prevented him from filing his habeas petition. *See, e.g., Simmons v. United States*, 974 F.3d 791, 797 (6th Cir. 2020) (habeas petitioner failed to adequately allege or explain how the supposedly inadequate state law libraries or lack of legal assistance had any bearing on his failure to timely file his petition).

Perkins admits that he has been personally employed at prison libraries and has had access to electronic research resources such as LEXIS since 2013. (Response, ECF No. 10, PageID.3782-84.) He asserts that he learned that a prisoner named Hutner had a case involving the sexual assault of a dead body after talking to a fellow prisoner at a prison writer's workshop in 2011-12. Perkins asserts that he then used Hutner's name as a search term and discovered the *Hutner* decision in 2016. (*Id.* PageID.3784-85.) From there, Perkins asserts that it took several years for him to learn about the relevant legal concepts, raise funds, and finally have his family hire an attorney to file his motion for relief from judgment in the state court. (*Ibid.*)

None of these allegations indicate that Perkins was impeded by unconstitutional state conduct that prevented him from discovering the legal basis for his claim and filing his habeas petition. Perkins merely asserts that he was personally either unlucky, slow, or unskilled in discovering the *Hutner* decision. And even after he discovered *Hutner* using the prison library resources, no unconstitutional state conduct caused Perkins to wait several additional years to file for state post-conviction review. *See e.g., Maclin v. Robinson*, 74 F. App'x 587, 589 (6th Cir. 2003) (limited access to prison law library does not constitute a state impediment); *Galloway v. Horton*, 2019 WL 1953305, at *2 (6th Cir. Jan. 25, 2019) (rejecting a prisoner's claim that a lack of legal resources constituted a state-created impediment and recognizing that a prisoner's "general statements regarding his inability to conduct legal research, without more, are insufficient to demonstrate that he was in a different position than most inmates who lack formal legal training"). This section does not provide an alternative starting point for the limitations period in this case.

C

The third potential starting point concerns petitions based on newly available legal grounds. *See* § 2244(d)(1)(C). It is true that *Hutner* was unavailable to Perkins when he pursued his direct

5

appeal. But *Hutner* is not the type of newly available legal rule contemplated by this section. By its terms, the limitations period commences under this section on "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Ibid. Hutner* did not recognize a new constitutional right, nor is it a decision of the U.S. Supreme Court. And even if *Hutner* qualified, it was decided on March 7, 1995, prior to the commencement of the limitations period under § 2244(d)(1)(A). This section also does not provide a later starting point for the limitations period.

D

The final potential alternative starting point commences on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *See* § 2244(d)(1)(D). Perkins suggests that *Hutner* constitutes a kind of factual predicate for his claim, and he did not discover it though acting diligently until 2016. (Response, ECF No. 10, PageID.3781-82). Newly discovered caselaw, however, is not a "factual predicate" of a habeas claim as that term is used in this section. *See Hertel v. Yost*, 2020 U.S. App. LEXIS 25160, *9, 2020 WL 5422430 (6th Cir. Aug. 7, 2020) ("[L]egal decisions not involving the petitioner do not constitute 'factual predicates' under § 2244(d)(1)(D).") Perkins therefore cannot point to this section either as providing a later starting point.

Accordingly, the only applicable starting point for the limitations period here is the date Perkins's conviction became final under § 2244(d)(1)(A). Because that date preceded the enactment of the statute of limitations, the period began running on April 25, 1996, and it expired one year later in 1997, decades prior to filing his federal habeas petition.

IV

For Perkins to obtain habeas review, therefore, he must demonstrate entitlement to a considerable period of equitable tolling. A habeas petitioner is entitled to equitable tolling "if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010)(quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Perkins asserts that he is entitled to equitable tolling because despite his diligent efforts to educate himself about the legal concepts relevant to his claims, he simply failed to timely discover the *Hutner* decision. Even assuming Perkins acted with diligence, he fails to demonstrate the existence of extraordinary circumstances.

The fact that Perkins is untrained in the law, was proceeding without a lawyer, or may have been unaware of the statute of limitations or *Hutner* does not warrant tolling. *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) ("Keeling's pro se status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing."); *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) ("[I]gnorance of the law alone is not sufficient to warrant equitable tolling." (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991))). Simply stated, whether it was poor luck or poor skill that prevented Perkins from discovering *Hutner*, neither qualifies as an extraordinary circumstance.

Perkins also asserts that he is entitled to tolling for the decades it took for him to psychologically come to terms with what he did—sexually assault Stacey after she was dead— because it "was heinous and unthinkable," and that he "owe[s] it to the court, friends, society, and most of all Ms. Stacey's family the truth." (ECF No. 10, PageID3783-84.) Of course, the "truth" according to Perkins also happens to benefit him the most as he believes it supports his *Hutner*

7

claim. Be that as it may, Pekins' claimed decades-long psychological journey is not an extraordinary circumstance justifying equitable tolling.

Alternatively, a habeas petitioner may demonstrate entitlement to tolling if he establishes that he is actually innocent. "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see also Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005).

Perkins does not offer any new evidence of his innocence. Indeed, he readily admits that he murdered Stacey. Rather, he asserts that *Hutner* undermines the prosecutor's sole theory at trial that he raped Stacey after he murdered her.

There are at least three problems with this argument. First, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998). Perkins is not claiming that he did not murder Stacey – he is only claiming that because the prosecutor only offered evidence that he raped her after he murdered her, that he is guilty of second-degree murder. That is a legal insufficiency argument, not a factual innocence argument.

Second, the fact that the prosecutor chose to pursue a pre-*Hutner* theory of guilt at trial does not mean that—as a matter of factual guilt or innocence—Perkins actually waited to sexually penetrate Stacey until after killing her. The attack, rape, strangulation, and fire all occurred close together temporally. Pre-*Hutner*, the exact order of events and whether there was any overlap between them was not especially relevant. It was not important for the prosecutor to establish that Stacey still had signs of life when Perkins began to sexually penetrate her. It is Perkins' burden

8

here to offer new evidence that he waited until after she was dead. He does not attempt to do so. Instead, he merely points to the trial theory of the prosecutor.

Finally, Perkins' actual-innocence argument ignores the fact that the prosecutor was permitted to establish first-degree felony murder by showing that Perkins merely *intended* to commit criminal sexual conduct at the time of the murder. The jury was instructed on this alternative at trial. (Jury Instructions, ECF No. 8-24, PageID.2999-3001, 3008.) Whether Stacy had just died or was still hanging on to life when Perkins sexually penetrated her, Perkins comes nowhere close to demonstrating through new evidence that he did not at least intend to commit criminal sexual conduct at the time he killed her. Perkins fails to establish entitlement to equitable tolling by way of showing his actual innocence.

V

Accordingly, the Court finds that the petition was filed after expiration of the one-year statute of limitations, and Perkins is not entitled to equitable tolling.

Because jurists of reason would not debate the Court's conclusion, the Court will also deny Perkins a certificate of appealability. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Finally, the Court will deny permission to appeal in forma pauperis because any appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

VI

Therefore, the Court 1) **DISMISSES** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**IT IS SO ORDERED**.

s/ Nancy G. Edmunds  
Hon. Nancy G. Edmunds  
United States District Judge

Dated:  September 28, 2023